JUL 15 2010

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SIERRA NEVADA HOLDINGS, INC.,

   Plaintiff,

  v.

UNITED LEASING CORPORATION;
EDWARD H. SHIELD,

   Defendants.

3:10-cv-00047-RCJ-RAM

ORDER

  Currently before the Court is a Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Motion to Transfer Venue (#4) filed by Defendants United Leasing Corporation ("United Leasing") and Edward H. Shield ("Shield")(collectively referred to herein as "Defendants") on March 15, 2010.  Plaintiff Sierra Nevada Holdings, Inc. ("Sierra Nevada") filed an Opposition (#11) on April 14, 2010, and Defendants filed a Reply (#14) on May 3, 2010.

  The Court heard oral argument on the matter on June 11, 2010, and now grants the Motion to Transfer Venue.

## BACKGROUND

  This case involves several fraud based claims arising from a loan transaction entered into between Plaintiff and Defendant United Leasing.  Plaintiff filed a Complaint (#1) in this action on January 25, 2010.  According to the allegations in the Complaint, Plaintiff "is and was, at all times material hereto, a corporation in good standing organized under the laws of the State of New Hampshire with its principal place of business located in the State of New Hampshire."  (Complaint (#1) at 1).  Defendant United Leasing "is and was, at all times

material hereto, a corporation organized under the laws of the State of Virginia with its principal place of business located in the State of Virginia." Id. Defendant Shield "is and was, at all times material hereto, a resident and citizen of, and domiciled in, the State of Virginia, and was [United Leasing's] President." Id.

Plaintiff alleges that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 "in that the amount in controversy exceeds $75,000.00" and "is between citizens of different states." Id. at 2. In addition, Plaintiff alleges that venue is proper in this district because "a substantial part of the events or omissions giving rise to the dispute" occurred in Northern Nevada. Id.

According to the allegations in the Complaint, the causes of action asserted in this case arise from a loan transaction entered into between Plaintiff and United Leasing to pay for repairs to a Bell 212 helicopter. Plaintiff asserts that in July 2004, it "purchased a Bell 212 helicopter which needed a substantial overhaul and refurbishment in order to perform work for the United States Forest Service." Id. The cost for the overhaul and refurbishment was approximately $1,300,000, and Plaintiff needed a loan to finance the work. Plaintiff states that it "approached the Defendants about financing the necessary loan." Id. at 3. Because of a prior business dealing with United Leasing, Plaintiff states that it and its principal, Jon Mayer ("Mayer"), "reposed special trust and reliance" in Shield and United Leasing. Id.

According to the Complaint, "[i]n a telephone conversation in early 2005, Shield (in Virginia) spoke telephonically with Sierra Nevada's principal, Jon Mayer (who is and was located in Reno) and indicated that he (Shield) could probably secure loan financing for Sierra Nevada at eight percent."[1] Id. The complaint asserts that a month later, Shield told Mayer that "he could finance the loan at a thirteen (13%) interest rate." Id.

Plaintiff states that it intended for the financing with United Leasing "to be short-term, not permanent, and [that Plaintiff's] representatives communicated this fact to Shield on

---

[1] This is the only direct reference in the Complaint to any activity relating to the case occurring in Nevada. However, the Court notes that Plaintiff did provide evidence of additional telephone communications and written correspondence that occurred between the parties during the relevant period while Mayer was located in Reno, Nevada.

several occasions." Id.  In addition, Plaintiff asserts that its representatives "specifically advised Defendants that the helicopter was for United States Forest Service operations but was on a standby capacity until a contract was secured, at which time any temporary loan from Defendants would be refinanced with a permanent, lower-rate loan." Id.  Plaintiff states that during this time, Shield made verbal statements to Plaintiff's principal, Mayer, to the effect that Shield "would take care of" Plaintiff, and so Plaintiff discontinued negotiations with other potential lenders and looked to Defendants to finance the loan. Id.

According to Plaintiff, the loan process with Defendants "dragged on for months," and eventually the interest rate was raised to 15.15%. Id. at 4.  In addition, Plaintiff asserts that Defendants never advised Plaintiff that it would have to pay any "residual" or "early payment penalties."[2] Id.

In 2007, Plaintiff "secured a fire fighting contract with the United States Forest Service and, based upon the guaranteed income, was able to secure regular bank financing at more competitive market rates." Id. at 5.  As a result, one of Plaintiff's representatives "contacted the Defendants via an interstate telephone call to advise them of Sierra Nevada's new financing and its desire to pay-off the outstanding loan balance." Id.  According to the complaint, during a series of telephone calls regarding the pay-off issue, Defendants demanded a substantial pay-off penalty. Plaintiff states that it protested the pay-off penalty, but that the parties ultimately settled on a demand of $285,508.33. Plaintiff asserts that it had no choice but to pay this amount otherwise United Leasing would not release the lien it held against the helicopter, thereby causing cancellation of Plaintiff's new, lower-rate loan. Id. at 5.

---

[2] Plaintiff's Complaint alleges that United Leasing was suffering financial difficulties between 2005 and 2007.  As a result, Plaintiff asserts that Defendants "hatched a scheme whereby they decided to structure the loan to [Plaintiff] as an 'equipment lease' because that structure entitled them to derive certain tax and other financial advantages." Id.  Plaintiff asserts that Shield informed Mayer that because the transaction was structured as a "lease," Plaintiff could ignore the "contract's boilerplate terms," including a venue provision which stated that any actions in law or equity relating to the lease should be commenced and maintained in "the General District Court or Circuit Court for Hanover County, Virginia, or the City of Richmond, Virginia, or the United States District Court for the Eastern District of Virginia." Id.

1    Based on the foregoing allegations, Plaintiff filed this lawsuit asserting claims for

2  fraudulent concealment, false promise/economic duress, fraud/misrepresentation, constructive

3  fraud, civil extortion, conversion, and civil RICO regarding the loan transaction and pay-off

4  penalty.

5    Defendants have now filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in

6  the alternative, Motion to Transfer Venue (#4). According to Defendants, the claims asserted

7  against them should be dismissed pursuant to Rule 12(b)(2) because the complaint "is devoid

8  of any factual allegations that establish personal jurisdiction over either defendant." (Motion

9  to Dismiss (#4) at 3).  Moreover, Defendants state that neither United Leasing nor Shield

10  "have any contacts with Nevada that would justify the assertion of personal jurisdiction." Id.

11  at 3.  In the alternative, Defendants seek an order transferring venue to the United States

12  District Court for the Eastern District of Virginia. Id. at 4. Defendants note that both United

13  Leasing and Shield are residents of Virginia.  Defendants further note that Plaintiff is a New

14  Hampshire corporation, and was neither registered nor qualified to conduct business in

15  Nevada at the relevant time, giving Nevada very little interest in this dispute. Id. at 4-5.

16    In response, Plaintiff asserts that personal jurisdiction exists over Defendants because

17  Shield, "personally and on behalf of United Leasing . . . made a number of misrepresentations,

18  omissions and extortions in multiple telephone calls, mailings and e-mails with Mr. Mayer

19  while [Mayer] resided, and was located in, Nevada." (Opposition to Motion to Dismiss (#11)

20  at 2). In addition, Plaintiff asserts that despite the allegations in the complaint that Plaintiff is

21  a New Hampshire corporation, Plaintiff is actually a resident of Nevada: "Sierra Nevada,

22  although incorporated in New Hampshire and maintaining a mere office presence there in

23  order to comply with New Hampshire law, is actually a Nevada resident (or citizen) as its

24  'nerve center' and thus principal place of business, is located here."[3] Id. Plaintiff also argues

25

26    [3] As noted by Defendants, Plaintiff was not registered with the Nevada Secretary of State as either
27  an entity incorporated in Nevada or an entity registered to do business in Nevada at the time the alleged
    unlawful conduct occurred or even when the motion to dismiss was filed by Defendants.  Plaintiff states
28  that this was a mere "oversight," and registered with the Nevada Secretary of State in 2010 before filing
    its opposition.

4

1   that the case should not be transferred to Virginia because it would be inconvenient for

2   Plaintiff's principal, Mayer, to travel to Virginia from Nevada to litigate the claims.

3       As will be discussed in the following, the Court finds that it is appropriate to transfer this

4   case to the United States District Court for the Eastern District of Virginia.

5                                  **DISCUSSION**

6       28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the

7   interest of justice, a district court may transfer any civil action to any other district or division

8   where it might have been brought."  According to the United States Supreme Court, section

9   1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer

10  according to an 'individualized, case-by-case consideration of convenience and fairness.'"

11  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(quoting Van Dusen v. Barrack, 376

12  U.S. 612, 622 (1964)).  A motion to transfer under section 1404(a) "calls on the district court

13  to weigh in the balance a number of case-specific factors."  Id.  In the Ninth Circuit, the factors

14  to consider include: (1) the location where the relevant agreements were negotiated and

15  executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of

16  forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the

17  plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in

18  the two forums, (7) the availability of compulsory process to compel attendance of unwilling

19  non-party witnesses, and (8) the ease of access to sources of proof.   Jones v. GNC

20  Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  Additionally, "the presence of a forum

21  selection clause is a 'significant factor' in the court's section 1404(a) analysis."  Id. (citing

22  Stewart, 487 U.S. at 29).

23      In this case, upon a review of the aforementioned factors, the Court finds that the

24  United States District Court for the Eastern District of Virginia is the most appropriate forum

25  for this action.  Defendants have shown that Virginia is the most convenient forum based on

26  the ease of access to witnesses and evidence, as well as the respective parties contacts with

27  Virginia.  In this regard, it appears that all the relevant witnesses, besides Plaintiff's principal

28  Mayer, are located in Virginia.  In addition, the contract was executed in Virginia and is subject

                                      5

to a forum selection clause providing that claims arising under the lease agreement may be brought in the courts of Virginia.

Although Plaintiff's choice of forum is Nevada, Nevada has little interest in adjudicating the merits of this dispute.  First, the parties are not citizens of Nevada.[4]  Second, Plaintiff concedes that it approached Defendants in Virginia to initiate the business transaction entered into between the parties.  Third, the helicopter at the center of the lease agreement was not located in Nevada during the contract negotiations and execution.  In fact, the purpose of the lease agreement was to finance repairs to the helicopter occurring in Canada - not Nevada.[5]

As such, based on the foregoing, the Court finds that for the convenience of the parties and witnesses, and in the interest of justice, this case should be transferred to the Eastern District of Virginia.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, Motion to Transfer Venue (#4) is GRANTED IN PART and DENIED IN PART.  Defendants' motion to dismiss is denied.  Defendants' motion to transfer to the United States District Court Eastern District of Virginia is granted.

DATED: This 15th day of July, 2010.

United States District Judge

---

[4] Plaintiff claims that it is now a citizen of Nevada because its principal place of business is Reno. However, at the time the alleged unlawful events occurred, Plaintiff was not registered with the Nevada Secretary of State as either an entity incorporated in Nevada or an entity registered to do business in Nevada. Plaintiff did not register with the Nevada Secretary of State until April 7, 2010 - three weeks after Defendants filed their motion to dismiss in this matter. (Opposition to Motion to Dismiss (#11) at Ex. 1, p. 2).

[5] Plaintiff states that Nevada has an interest in the subject matter of this litigation because Plaintiff intended to use the helicopter in Nevada under a government contract to fight forest fires. However, according to the complaint, Plaintiff did not have a contract with the United States Forest Service at the time the loan transaction occurred in 2005. (Complaint (#1) at 5). It wasn't until 2007 that Plaintiff "secured a fire fighting contract with the United States Forest Service" to use the helicopter in the Nevada region. Id.